IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CV 152 WCM

| | |
|---|---|
| HEATHER MASSEY, ) </br> ) </br> Plaintiff, ) </br> ) </br> ) </br> v. ) </br> ) </br> ) </br> ANDREW M. SAUL, ) </br> Acting Commissioner of the Social ) </br> Security Administration, ) </br> ) </br> Defendant. ) </br> _____ ) | MEMORANDUM OPINION </br> AND </br> ORDER |

This matter is before the Court on the parties' cross motions for summary judgment. Docs. 13 & 16.[1]

## I. Procedural Background

Heather Massey ("Plaintiff") previously filed applications for disability insurance benefits and supplemental security income. Transcript of Administrative Record ("AR") pp. 152-53 & 992-1004. On November 16, 2016, an Administrative Law Judge ("ALJ") issued an unfavorable decision, and on April 14, 2017 the Appeals Council denied Plaintiff's request for review of that decision. AR pp. 1358-1374 & 1381-1383.

---

[1] The parties have consented to the disposition of this matter by a United States Magistrate Judge. Docs. 10 & 11.

Plaintiff filed a Complaint in this court on June 9, 2017 and on February 23, 2018, a Consent Motion to Remand was granted. See Massey v. Berryhill, No. 1:17-cv-148-MR, United States District Court, Western District of North Carolina, Docs. 1 & 13. The Appeals Council thereafter vacated the November 16, 2016 Decision and remanded to the ALJ for further proceedings. See AR pp. 1434-1440.

On November 30, 2018, a hearing was conducted. Plaintiff appeared and testified and was represented by counsel. AR pp. 2464-2495.

On February 27, 2019, the ALJ issued an unfavorable decision. AR pp. 1324-1344. On May 10, 2019, Plaintiff filed the instant action. Accordingly, the ALJ's February 27, 2019 Decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. §§ 404.984(a); 416.1484(a).[2]

---

[2] When a case is remanded by a federal court, the subsequent decision of the ALJ will become the final decision of the Commissioner unless the Appeals Council assumes jurisdiction over the case (either by the Appeals Council's own motion or because claimant filed written exceptions to the ALJ's decision). See 20 C.F.R. §§ 404.984(a); 416.1484(a); see also AR p. 1325 ("If you do not file written exceptions and the Appeals Council does not review my decision on its own, my decision will become final on the 61st day following the date of this notice."). Here, Plaintiff did not file written exceptions and the Appeals Council did not review the February 27, 2019 decision on its own motion. Plaintiff requested an extension of time to submit written exceptions to the Appeals Council on March 5, 2019, AR p. 1302, and on June 24, 2019, the Appeals Council granted Plaintiff a thirty-day extension of time to submit written exceptions. AR pp. 1299-1301. Although Plaintiff did not file written exceptions within this extended period, she did file the instant action prior to expiration of that period.

## II. The Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P (the "Listings"); (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin,

780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

The ALJ determined that Plaintiff has the severe impairments of bilateral carpal tunnel syndrome, degenerative disc disease, right knee degeneration, migraine headaches, respiratory disorder, obesity, depression, anxiety, and bipolar disorder. AR p. 1330. The ALJ further found that Plaintiff had the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant should avoid climbing ropes, ladders, and scaffolds, and she is able to perform other postural maneuvers only occasionally. The claimant is able to reach overhead bilaterally occasionally, and she is able to perform frequent bilateral handling and fingering. She should avoid concentrated exposure to hazards, vibrations, and fumes and other respiratory irritants. Finally, the claimant is able to perform simple, routine, repetitive work.

AR p. 1333.

Applying this RFC, the ALJ found that Plaintiff could perform other work such that she was not disabled from December 12, 2015 (the alleged disability onset date) through February 27, 2019 (the date of the ALJ's Decision). AR pp. 1343-1344.

### IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1)

4

whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Analysis

Plaintiff makes two allegations of error: (1) the ALJ failed to evaluate and assign weight to an opinion of her treating physician, Dr. Charles Young; and (2) the ALJ erred in his evaluation of Plaintiff's upper extremity ("UE") limitations, including the ALJ's consideration of a November 4, 2014 decision by the North Carolina Department of Health and Human Services

("NCDHHS") finding Plaintiff disabled.

### A. Dr. Charles Young

An ALJ must give "good reasons" in his decision "for the weight given to a treating source's medical opinion(s), i.e., an opinion(s) on the nature and severity of an individual's impairment(s)." SSR 96-2P. Further,

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Id.

In this case, Plaintiff argues that the ALJ failed to evaluate a medical opinion regarding her need to elevate her lower extremities. Specifically, Plaintiff relies on a November 7, 2018 treatment note (the "Note") in which Dr. Charles Young recorded the following "Plan": "Her lower extremity [sic] is mild and chronic. Affects both lower extremities at the level of the feet and ankles only. Refilled prescription for compression stockings 15-20 mmHg pressure. She did not fill the last prescription. Elevate lower extremities frequently. Low sodium diet. Her medication likely contributes, namely gabapentin. She will continue to use Lasix, intermittently and if using Lasix supple [sic] with potassium." AR p. 2408.

6

The Commissioner does not dispute that Dr. Young should be considered a treating physician but instead argues that his statement that Plaintiff should elevate her lower extremities frequently should not be considered a medical opinion, and that the ALJ's failure to consider the Note was harmless error. Doc. 17, pp. 7-10.

A "medical opinion" is defined as a statement from an acceptable medical source that "reflect[s] judgments about the nature and severity of [a claimant's] impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 1527(a).

The statement in the Note regarding elevation of Plaintiff's legs does not fit the Regulation's definition of a "medical opinion." The Note does not set out Plaintiff's work limitations or indicate the effect of such elevation or the effect of a failure to do so. Instead, the statement appears to be one of the potential treatments Dr. Young would like Plaintiff to try. See Moxley v. Colvin, No. 1:13CV460, 2014 WL 2167878, at * 5 (M.D.N.C. May 23, 2014) (treatment note that described injury and recorded results of physical examination and several treatment options was not a medical opinion because it did not set forth an opinion on claimant's work limitations or prognosis) (citing McDonald v. Astrue, 492 Fed. App'x 875, 884 (10th Cir.2012) ("The treatment notes cited by [the claimant] do not qualify as medical opinions [because they] do not indicate

7

any prognoses, nor do they provide opinions as to what [the claimant] could still do despite her impairments or the nature of her mental restrictions.")); Leovao v. Astrue, No. 2:11cv00054, 2012 WL 6189326, at * 5 (W.D.N.C. Nov. 14, 2012) (Mag. J. Mem. & Rec.) (document not an "opinion" within meaning of 20 C.F.R. § 1527(a)(2) because "it did not directly address Plaintiff's ability to perform work-related activities"), *adopted*, 2012 WL 6186824 (W.D.N.C. Dec. 12, 2012); Love-Moore v. Colvin, No. 7:12-cv-104, 2013 WL 5366967, at * 11 (E.D.N.C. Aug. 30, 2013) ("medical records are, *ipso facto*, generated upon treatment, and the rule as Plaintiff apparently views it would give every medical record controlling weight.").

Plaintiff relies on Hunter-Tedder v. Berryhill, No. 5:17-cv-53-MOC, 2017 WL 5759941 (W.D.N.C. Nov. 27, 2017), in which the claimant's treating physician opined that claimant's "legs are better if she elevates her legs….If she sits with her legs down more than an hour, she gets ankle edema." That statement, however, set forth the effect of both leg elevation and failure to do so, as well as a specific opinion regarding how long the plaintiff could sit without experiencing ankle edema. See Hunter-Tedder, 5:17-cv-53-MOC, United States District Court, Western District of North Carolina, AR p. 508. Further, there was no dispute that the physician's statement at issue constituted a medical opinion.

8

Accordingly, the ALJ's failure to discuss and assign weight to the Note does not require remand.

### B. Upper Extremity Limitations

Plaintiff also argues that the ALJ did not properly account for her upper extremity limitations. Specifically, Plaintiff contends that the ALJ incorrectly concluded that she experienced improvement following her carpal tunnel release surgeries, and that the record instead supports her position that she continues to struggle with her hands (particularly her right hand) due to ongoing pain, limited range of motion, swelling, and tenderness. See Doc. 14, p. 11.

In his February 27, 2019 Decision, the ALJ noted that Plaintiff underwent left carpal tunnel release surgery in September 2015 and right carpal tunnel release in September 2016. AR pp 1334-35. With respect to Plaintiff's left hand, the ALJ found that "[s]ubsequent records indicate that the left wrist healed nicely, with asymptomatic left palm and normal range of motion. The claimant reported that she was very happy with the surgery on the left, but complained of continued and increasing pain in the right." AR pp. 1334-35. With respect to Plaintiff's right hand, the ALJ noted that "[t]wo weeks following the right carpal tunnel release, the claimant reported that she was 'doing well with no significant pain.'" (AR p. 1335, quoting AR p. 983). The ALJ explained that on physical exam in March 2017, Plaintiff had negative

Tinel's and Phalen's signs. AR p. 1335 (discussing AR pp. 1604-05). The ALJ went on to state:

> In April 2017, the claimant presented to the emergency room with complaints of a new onset of swelling to the base of the right thumb ongoing for three days (Exhibit 52F p. 9). However, medical evidence includes little, if any, additional treatment for this condition, and the objective medical evidence does not indicate that this impairment is likely to result in the significant functional limitations alleged by the claimant.

AR p. 1335.

Substantial evidence supports the ALJ's conclusions. While Plaintiff relies on four subsequent treatment notes to support her position that she "continued to suffer from considerable issues with her hands despite the CTS release surgeries," Doc. 14, p. 3, the records cited by Plaintiff do not support that position. See AR pp. 1663-64 (April 30, 2017 Emergency Room record wherein Plaintiff presented with right hand pain, wrist pain, numbness and weakness of right hand; moderate pain and minimal swelling; exhibited positive Tinel's and Phalen's on physical exam; but also reported she had not had such complaints "since CTS/release done by Dr. Lechner of Carolina Hand."); AR p. 1817 (complaint of lower back and neck pain); AR p. 1801 (February 15, 2018 treatment note reflecting "perhaps slight edema in hands" on physical exam and treatment plan of low sodium diet); AR pp. 2405-07 (November 7, 2018 treatment note wherein Plaintiff reported a domestic

altercation during which the fingers on her right hand were pulled back, on physical exam, "right hand reveals tenderness at the PIP and MCP joints of the middle finger. Minor swelling. No deformity. Pain with flexion and extension of this digit." Plan notes that "clinically most suspicious for a sprain in the right middle finger. Placed in a finger splint. Use Tylenol for pain. Elevate. Apply local heat.").

Similarly, Plaintiff asserts that the ALJ failed to provide persuasive and valid reasons for not affording substantial weight to a November 4, 2014 decision by the NCDHHS finding Plaintiff disabled. Doc. 14, pp. 11 & 13. However, the ALJ explained that since the time of the NCDHHS Decision, "the claimant underwent bilateral carpal tunnel release surgeries, warranting differing handling and fingering limitations," and that the additional evidence relating to Plaintiff's condition following the NCDHHS Decision "provides a basis for making a different finding…." AR p. 1341. This explanation was sufficient under the standard set out in Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 13) is **DENIED**, and the Commissioner's Motion for Summary Judgment (Doc. 16) is **GRANTED**.

Signed: August 7, 2020

W. Carleton Metcalf
United States Magistrate Judge